IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALLEGIS GROUP, INC. and | * | |
| AEROTEK, INC., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 8:22-cv-01516-PX |
| v. | * | |
| | * | |
| KENNETH D. NOSKY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

***

## MEMORANDUM OPINION

Pending before the Court in this employment dispute are cross motions for summary judgment filed by Plaintiffs Allegis Group, Inc. ("Allegis") and Aerotek, Inc. ("Aerotek"), and Defendant Kenneth D. Nosky ("Nosky").  ECF Nos. 48 & 54.  Also pending are Nosky's motion to seal, ECF No. 56, and Plaintiffs' motion for leave to file a surreply, ECF No. 68.  No hearing is necessary.  D. Md. Loc. R. 105.6.  For the following reasons, Nosky's motion to seal and Plaintiffs' motion for leave to file a surreply are GRANTED.  Nosky's motion for summary judgment is GRANTED, and Plaintiffs' motion is DENIED.

## I.    Background

Except where otherwise noted, the following facts are undisputed.  Aerotek is a Maryland-based company that provides recruiting and staffing services to various companies throughout the United States.  ECF No. 48-2 ¶ 2; ECF No. 65 ¶ 3.  Allegis is the parent company of Aerotek and is also based in Maryland.  ECF No. 48-2 ¶ 3; ECF No. 65 ¶ 4.

Aerotek hired Nosky as a recruiter out of its Buffalo, New York office in January of 2015.  ECF No. 48-4 at 4–6; *see also* ECF No. 65-1 at 2.  Nosky signed an employment agreement in which he promised not to use or divulge confidential company information and to

return company records upon his termination.  ECF No. 65-1 at 6; ECF No. 48-4 at 10–11.  The

agreement's "covenant not to divulge confidential information" states in pertinent part:

> EMPLOYEE covenants and agrees that, except as required by the proper performance of EMPLOYEE's duties for AEROTEK, **EMPLOYEE shall not use, disclose or divulge any Confidential Information of AEROTEK to any other person, entity or company** besides AEROTEK. For purposes of this Agreement, **"Confidential Information" shall mean information not generally known by the competitors of AEROTEK or the general public concerning AEROTEK's Business that AEROTEK takes reasonable measures to keep secret**.

ECF No. 65-1 ¶ 6 (emphasis added).

And the agreement's return-of-records provision reads:

> EMPLOYEE agrees, upon termination of EMPLOYEE's employment with AEROTEK for any reason whatsoever, **to return to AEROTEK all records and other property (whether on paper, computer discs or in some other form), copies of records, and papers** belonging or pertaining to AEROTEK (collectively "Company Records"). EMPLOYEE further agrees **not to engage in any unauthorized destruction or deletion of Company Records during employment or upon termination of employment**, including, without limitation, the deletion of electronic files, data, records or e-mails.

*Id.* ¶ 7 (emphasis added).

During his six-year tenure at Aerotek, Nosky was promoted to account manager and

moved to the company's New Jersey office.  ECF No. 48-4 at 12.  In this new role, Nosky's

focus shifted to client development, for which he managed existing clients and was responsible

for securing new clients.  *Id.* at 7–8.

Beginning in late July of 2021, Nosky started communicating with Aerotek's direct

competitor, Jobot, LLC ("Jobot"), about a potential job opportunity.  ECF No. 48-2 ¶ 5; ECF No.

54-3 at 9–10.  A month later, on August 21st, Jobot offered Nosky a position as a full desk

recruiter.  ECF No. 54-3 at 14–15, 27.  Nosky accepted the position that same day.  *Id.* at 14–15.

On or around September 3, 2021, Nosky resigned from Aerotek and informed the company that he was going to work for Jobot. ECF No. 48-4 at 18. After learning that Nosky had accepted a position at Jobot, Aerotek performed a forensic review of Nosky's electronic devices. ECF No. 48-3 ¶ 6. The forensic review revealed that on the day of his resignation, Nosky sent three emails from his work account to his personal Gmail account with the subject lines "Everything," "Everything2," and "Everything4" (there was no "Everything3"). *See* ECF Nos. 55-2, 55-3 & 55-4. Attached to each email were several files which included personal photographs and documents as well as company records. *See id.* The company records included about 45 spreadsheets, some of which contained information about Aerotek's current and prospective clients. *See id.*; ECF No. 48-4 at 29–33; ECF No. 54-3 at 48

Nosky, for his part, testified that he was not particularly selective about the emails he forwarded to his personal address. ECF No. 48-4 at 20, 24; ECF No. 54-3 at 60. He spent "five minutes" attaching "anything that [he] thought was useful or valuable." *Id.* As to forwarding company records, he had no "process behind it" and did not anticipate using the information while at Jobot. ECF No. 54-3 at 35, 49, 52. Instead, he sent the company records to himself because he was "proud of the work that [he] did" and wanted "to look back at it maybe in the future." *Id.* at 52.

Shortly after sending himself the emails, Nosky returned his company computer to Aerotek and left the office. ECF No. 54-3 at 33. Ten days later, on September 13, 2021, Nosky started at Jobot. ECF No. 48-4 at 18. That day, he permanently deleted the forwarded records from his Gmail account and cell phone. ECF No. 54-3 at 44–45. Nosky did not copy the information or disclose it to anyone before deleting it. *Id.* at 45. Nosky also has not

communicated with any of the clients listed in the spreadsheets or any of Aerotek's other clients. *Id.* at 22–23, 28.

On June 21, 2022, Plaintiffs filed suit against Nosky, ECF No. 1, and on August 9, 2022, they amended the Complaint, ECF No. 23.  Nosky answered the First Amended Complaint, ECF No. 29, and discovery ensued.  Following the close of discovery, the parties filed cross motions for summary judgment.  ECF Nos. 48 & 54.  Plaintiffs also moved for leave to file a surreply, ECF No. 68, which Nosky opposed, ECF No. 69.  Plaintiffs next dismissed the sole count pertaining to Allegis by way of the Second Amended Complaint.  *See* ECF No. 54-1 at 13–14. The parties now agree that Aerotek stands as the sole Plaintiff.  *See id.* at 14–15; ECF No. 62 at 2.

Aerotek proceeds against Nosky on three common law claims: breach of contract (Count One); breach of duty of loyalty (Count Two), and conversion (Count Three).  ECF No. 65 ¶¶ 40–58.  The matter is fully briefed and ready for resolution.  For the reasons discussed below, none of the claims survive challenge and summary judgment must be awarded in favor of Nosky.

## II.    Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522

(4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted.  *Celotex*, 477 U.S. at 322.  On cross motions for summary judgment, "a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'"  *Snyder ex rel. Snyder v. Montgomery Cnty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

## III.    Analysis

For each claim, Nosky contends that Aerotek lacks Article III standing, or alternatively, that the record viewed most favorably to him compels summary judgment in his favor.  Because standing implicates this Court's power to hear the case, it must be addressed in advance of any merits analysis.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–101 (1998); *see also Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause.").

Pursuant to Article III of the United States Constitution, federal courts are of limited jurisdiction, hearing only live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); U.S. Const. art. III, § 2.  For a dispute to satisfy the "case-or-controversy requirement," the plaintiff must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Baker v. Carr*, 369 U.S. 186, 204 (1962).  Standing is conferred where the plaintiff demonstrates that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

Nosky raises lack of standing at the summary judgment stage.  ECF No. 54-1 at 13–16. Accordingly, the Court cannot look to the mere allegations in the Complaint.  Rather, the plaintiff, who bears the burden of establishing standing, must set forth "by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017).  Further, because "[t]he standing requirement applies to each claim that a plaintiff seeks to press," *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014), the Court will separately consider whether Aerotek has demonstrated standing as to each claim.

### A.      Breach of Contract (Count One)

In the Second Amended Complaint, Aerotek advances three theories of relief.  Aerotek avers first, that Nosky breached his employment agreement by using or disclosing "confidential information" for "his and Jobot's benefit"; second, that Nosky breached the agreement by failing to "return" the business records he had forwarded to himself; and third, that Nosky breached the

6

agreement by deleting the emails without Aerotek's authorization. ECF No. 65 ¶ 42; *see also* ECF No. 48-1 at 24, 29.

As to the first liability theory, Aerotek now concedes that Nosky never used or disclosed confidential information in connection with his new employment at Jobot.  *See* ECF No. 48-1 at 22–23; ECF No. 62 at 8–10.  Thus, Aerotek has abandoned this claim.  *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (finding that plaintiff abandoned claim when she failed to oppose argument in defendant's summary judgment motion); *see also Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 448 (D. Md. 2022) (same).

In its place, however Aerotek now tries to complain that Nosky broke the agreement by "plac[ing] that information outside of Aerotek's control within the custody of a third party: *Google*."  ECF No. 62 at 8 (emphasis added).  Specifically, says Aerotek, when Nosky forwarded the work-related attachments to his personal Gmail account, he somehow "disclosed" corporate confidential information to the email provider.  *Id.*

But as Nosky rightly points out, "a 'disclosure to Google' claim was never pled."  ECF No. 54-1 at 23.  Nowhere does the Second Amended Complaint "put[] the defendant on notice" of this purported theory, and so, Nosky had no way of knowing "the evidence [he] need[ed] to adduce in order to defend against the plaintiff's allegations."  *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) (internal citation and quotation marks omitted).  The introduction of new legal theories at the summary judgment stage "undermines the complaint's purpose and can thus unfairly prejudice the defendant."  *Id.*; *see also Cloaninger ex rel. Est. of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (denying plaintiff's attempt to advance its malicious prosecution claim based on different theory at summary judgment stage).  Accordingly, the Court cannot permit Aerotek to proceed with this wholly new theory now.  To

do otherwise "would amount to constructive amendment of the controlling complaint, placing a clear burden on [Nosky's] ability to effectively and sufficiently defend [himself]." *Harris*, 523 F. App'x at 947.

The Court next turns to the second theory, that Nosky breached the agreement by failing to return "company records" he had emailed to himself. ECF No. 48-1 at 23–25. Nosky does not dispute that the "return" provision was enforceable, nor does the Court find any issues related to its enforceability. *See* ECF No. 54-1 at 27–30. Thus, the question boils down to whether Nosky's failure to return the records attached to the email constitutes a breach of the contractual obligation that Nosky owed to Aerotek. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001).

As for whether Aerotek has standing to pursue this claim, Nosky focuses exclusively on whether Aerotek can demonstrate "financial injury" stemming from the alleged breach. Because no evidence supports any financial injury to Aerotek, says Nosky, Aerotek has suffered no "injury-in-fact" sufficient to confer standing. ECF No. 54-1 at 15, 35; ECF No. 64 at 3–4. But injury-in-fact is not so narrowly defined. Rather, it amounts to any "invasion of a legally protected interest" that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. While tangible harms like financial injury "readily qualify as concrete," intangible harms too, may be sufficient. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417, 425 (2021). Where an "asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts," a sufficient injury-in-fact exists such that the Court may hear the claim. *Id.*; *Spokeo*, 578 U.S. at 340–41.

The Court begins by acknowledging an emergent, and intense, debate surrounding whether the breach of a contractual right alone constitutes a legally cognizable injury-in-fact. Notably, since the Supreme Court broadly declared that "an injury in law is not an injury in

fact," *TransUnion*, 594 U.S. at 427, courts have wrestled with how to engraft this sweeping pronouncement on a variety of common law claims. *Compare Dinerstein v. Google, LLC*, 73 F.4th 502, 518–22 (7th Cir. 2023), *and Perry v. Newsom*, 18 F.4th 622, 632 (9th Cir. 2021), *with Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2021); *see also Glennborough Homeowners Ass'n v. United States Postal Serv.*, 21 F.4th 410, 415 (6th Cir. 2021). The Court need not wade into the debate because it is well-settled that unauthorized retention of confidential corporate information which is itself of great value to the corporation constitutes a sufficiently concrete harm for which the corporation may seek redress in a court of law. *See e.g.*, *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 314–15 (2004); *Taylor*, 365 Md. at 174–75; *Zahodnick v. Int'l Bus. Machines Corp.*, 135 F.3d 911, 915 (4th Cir. 1997) (upholding injunctive relief for claim based on breach of confidentiality provision); *Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2013 WL 6036694, at *7–8 (D. Md. Nov. 12, 2013) (denying summary judgment on breach of confidentiality claim); *see also* Restatement (Third) of Unfair Competition § 42 cmt. c (1995) ("The employment relationship by its nature ordinarily justifies an inference that the employee consents to a duty of confidence."); Restatement of Emp. L. § 8.07 cmt. b (2015) (employer has legitimate interest in protecting its confidential information).

Indeed, as Aerotek rightly argues, the availability of nominal damages provides some redress for this very kind of concrete yet difficult to monetize harm. *See* ECF No. 62 at 3; *see also Doe v. Chao*, 306 F.3d 170, 181 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004) ("Nominal damages, when available, are designed to vindicate legal rights without proof of actual injury." (internal quotation marks omitted)). In this respect, the Supreme Court has acknowledged that contract claims can proceed, and can be redressed, through nominal damages alone. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798 (2021) (concluding that because "*every* legal

9

injury necessarily causes damage," such as "the fact of breach of contract by itself," nominal damages may provide sufficient redress necessary to confer standing); *see also id.* at 799 (observing that "[t]he law tolerates no farther inquiry than whether there has been the violation of a right" (quoting *Webb v. Portland Mfg. Co.*, 29 F.Cas. 506, 508–509 (No. 17,322) (CC Me. 1838)).

Here, the contractual breach, if proven, is that Nosky failed to return records taken from Aerotek—records which indisputably included protected confidential client information.  *See* ECF No. 48-4 at 21–26.  In this case, therefore, the unauthorized taking and keeping of confidential work product *is* a harm sufficiently concrete and particularized.  It is also the kind of harm historically and traditionally recognized as according an employer a cause of action. Because Nosky's unauthorized retention of Aerotek's confidential business records lies at the heart of the claim, Aerotek has standing.

Next as to whether the contract claim survives summary judgment, Nosky argues that because the confidential material consists solely of electronic records, it is impossible to comply with the "return" provision of the agreement, and so the claim fails as a matter of law.[1]  ECF No. 54-1 at 28–30.  This is so, Nosky maintains, because unlike paper records, emails cannot be "returned," although they can be destroyed.  *Id.*  Thus, Nosky could not have breached the contract because he cannot "return" the electronic records.  *Id.*

---

[1] Nosky also argues that Count One should be dismissed because the alleged breach, as pleaded, concerns a separate agreement, the "Investment Growth Plan" (the "IGP"), for which no evidence of breach has been generated. ECF No. 54-1 at 16–18; *see* ECF No. 65 ¶ 42 (alleging Nosky "breached Paragraphs 6 and 7 *of the IGP*") (emphasis added).  Aerotek responds that this reference to "the IGP" in the Second Amended Complaint is "an obvious scrivener error," in that the allegations otherwise track precisely an alleged breach of paragraphs 6 and 7 of the employment agreement.  *See* ECF No. 62 at 4.  The Court agrees with Aerotek that the identified provisions of employment agreement (paragraphs 6 and 7) mirror those alleged to have been breached.  *See* ECF No. 65-1 ¶¶ 6–7. Furthermore, the IGP is not appended to the Second Amended Complaint, and Aerotek had previously dismissed the only cause of action which relied upon the IGP.  *Compare* ECF No. 23 ¶¶ 57–67, *with* ECF No. 65 ¶¶ 47–52.

In so arguing, Nosky urges the Court to follow *Allegis Grp., Inc. v. Bero*, No. ELH-22-686, 2023 WL 5989438 (D. Md. Sept. 1, 2023).  ECF No. 64 at 2.  There, Aerotek employee, Christopher Bero, also had forwarded himself several confidential records shortly before leaving the company to join Jobot.  *Id.* at *3–4.  Bero was bound by a materially identical return-of-records provision to the one at issue here.  *Compare id.* at *39, *with* ECF No. 65-1 ¶ 7.

The *Bero* court concluded that the "return" provision's requirement would apply to physical records but not an electronic version transmitted by email, "because it is not self-evident that [emails] can be returned."  *Bero*, 2023 WL 5989438, at *41 (noting that employer was not able to "recall any specific examples" of other employees that had "returned" emails).  The Court finds this reasoning persuasive.  Although Aerotek's corporate representative hypothesized that emails may be "returned" to the corporation by emailing them back to Aerotek and then deleting them, ECF No. 54-4 at 73–74, this cannot constitute a "return" of the originally transmitted records.  This is because forwarding an email and its attachment to Aerotek would simply create a new email with a digital copy of said attachments.  ECF No. 54-1 at 27; *see also Bero*, 2023 WL 5989438, at *41.  The email and its attachments originally in the possession of the sender, however, still stay with the sender.  None are, in any real sense, "returned."  *See id.*

In an effort to undermine *Bero*, Aerotek argues baldly that the *Bero* court misconstrued the "plain language" of the employment agreement.[2]  But Aerotek offers no explanation in this regard.  *See* ECF No. 68-1 at 4.  Aerotek further argues that the return provision's purpose is not to "recover[] a record *per se*," but instead "to ensure that the company had a copy of its own information" that it "may or may not still have."  ECF No. 68-1 at 5–6.  This argument is also

_____

[2] Because Nosky raised *Bero* for the first time in his reply, ECF No. 64 at 2, the Court accepts Aerotek's surreply in which it responds to *Bero*.  ECF No. 68 at 1–2, *see Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

unavailing because, in this context, the original act of forwarding an email and attachments would (and did) create a record of that email and its attachments in Aerotek's own systems.  *See* ECF No. 48-3 ¶ 8.  Accordingly, because Aerotek has not generated any evidence that Nosky deprived the corporation of a record that could in fact be returned, summary judgment must be granted in Nosky's favor.

Last, Aerotek argues that Nosky somehow violated the "unauthorized destruction or deletion" provision of the agreement when he deleted his own emails and attachments ten days after leaving Aertotek's employment.  ECF No. 48-1 at 24, 29; ECF No. 62 at 13–14; *see* ECF No. 65-1 ¶ 7.  The plain language of the agreement prohibits an employee from engaging in any "unauthorized destruction or deletion of Company Records *during employment or upon termination of employment*."  ECF No. 65-1 ¶ 7 (emphasis added).  The agreement does not reach an employee's conduct after he leaves Aerotek.  Nor would it make any sense to read the provision as Aerotek urges.  If, as Aerotek asserts, Nosky could not delete electronic files that he sent to himself, then he could never mitigate the transgression of having emailed himself corporate records in the first instance.  Furthermore, Aerotek's corporate representative testified that Aerotek *wanted* Nosky to delete the emails.  ECF No. 54-4 at 66 (Q: So if the three e-mails or anything else that he sent to himself, to his Gmail account, was still there . . . Aerotek would want that information to be deleted, right? A: Yes.).  Thus, on this record, no rational trier of fact could conclude that Nosky's deletion of the emails well after he left Aerotek's employ violates the unauthorized destruction or deletion provision of the agreement.  Summary judgment on the breach of contract claim is granted in Nosky's favor.

**B.      Breach of Duty of Loyalty (Count Two)**

Turning next to the breach of the duty of loyalty claim, Aerotek avers that Nosky

breached his duty owed to Aerotek when he emailed himself confidential corporate

information in anticipation of his employment with Jobot.  ECF No. 48-1 at 30–31.  In Maryland,

a breach of loyalty claim is often alleged alongside breach of contractual employment

obligations.[3]  *Weichert Co. of Maryland v. Faust*, 419 Md. 306, 318 (2011).  This is because

loyalty is an implied duty "read into every contract of employment."  *Id.* (quoting *Maryland*

*Metals, Inc. v. Metzner*, 282 Md. 31, 38 (1978).  In line with this duty, an employee is required to

"act solely for the benefit of his employer in all matters within the scope of employment" and to

refrain from "actively competing with his employer during the tenure of his employment."

*Maryland Metals*, 282 Md. at 38.  Accordingly, a breach of loyalty may be supported in a variety

of circumstances, to include where a former employee solicits an employer's major customers on

behalf of a competitor; entices fellow employees from the company; usurps major business

assets; or commits other "patently wrongful acts in derogation of the trust and confidence

reposed in them by the complaining employer[]."  *See id.* at 44–45 (collecting cases).

As to standing, Nosky argues that no facts demonstrate any sufficiently concrete and

particularized harm.  *See* ECF No. 54-1 at 15–16; ECF No. 64 at 3–4.  Again, Nosky collapses

the sufficiency of the evidence to prove the claim with the interests animating standing.  Nosky

arguably breached a duty when he emailed himself a trove of Aerotek client lists and other

information, then kept such information while he began his new job with Aerotek's direct

---

[3] Maryland's choice of law principles govern this claim.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *DiFederico v. Marriott Int'l, Inc.*, 130 F. Supp. 3d 986, 990 (D. Md. 2015), *aff'd*, 677 F. App'x 830 (4th Cir. 2017).  Under the "internal affairs doctrine," Maryland applies the law of the state of the plaintiff's incorporation, which here is Maryland.  *Weaver v. ZeniMax Media, Inc.*, 175 Md. App. 16, 54 (2007); ECF No. 1 ¶ 3.

competitor.  This is the kind of particularized, concrete harm that historically provides a basis to sue for redress in American courts.  *See e.g.*, *Snepp v. United States*, 444 U.S. 507, 510–11 (1980); *Kann v. Kann*, 344 Md. 689, 710 (1997) (acknowledging "the universal proposition that a breach of fiduciary duty is a civil wrong" with varying remedies depending on the type of breach and fiduciary); *Lasater v. Guttmann*, 194 Md. App. 431, 454 (2010) (directing plaintiffs seeking to bring claim based on breach of fiduciary duty to "identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available," and select the appropriate remedy).  Thus, Aerotek has standing to pursue the claim.

That said, the merits analysis must focus on whether sufficient record evidence exists from which a rational juror could find that Nosky actually breached this duty.  As to this, Aerotek has marshaled no evidence that Nosky did anything with Aerotek's information to run afoul of any loyalty owed.  *See* ECF No. 54-3 at 44–45.  Nosky did not share the information with anyone at Jobot; nor did he contact any of Aerotek's clients after leaving the company. ECF No. 54-3 at 22–23, 28.  Although Aerotek urges that the mere temporary possession of the information can sustain the claim, the Court finds no support for this in the law.  *See Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 627 (D. Md. 2001), *aff'd*, 30 F. App'x 117 (4th Cir. 2002) (granting summary judgment in favor of employee where no evidence generated that employee solicited employer's business or "wrongfully withheld future business opportunities while he was still employed").  On this claim, the Court grants summary judgment in favor of Nosky.

### C.    Conversion (Count Three)

Last, as to the conversion count, the claim rests solely on Nosky's having emailed himself company records.  *See* ECF No. 48-1 at 32; ECF No. 65 ¶ 54.  A person is liable for conversion when he exerts "ownership or dominion" over the personal property of another "in

14

denial of his right or inconsistent with it." *Interstate Ins. Co. v. Logan*, 205 Md. 583, 588–89 (1954).[4]  A conversion claim "'requires not merely temporary interference with property rights, but the exercise of unauthorized dominion and control to the *complete exclusion* of the rightful possessor.'" *Thomas v. Artino*, 723 F. Supp. 2d 822, 834 (D. Md. 2010) (emphasis added) (quoting *Yost v. Early*, 87 Md. App. 364, 388 (1991)); *see also Messing v. Bank of Am., N.A.*, 373 Md. 672, 694 (2003) (no conversion where defendant had not exercised unauthorized control "to the complete exclusion of the rightful possessor").  Accordingly, where the owner is not deprived of the property, "there can be no conversion." *All. for Telecommunications Indus. Sols., Inc. v. Hall*, No. CCB-05-440, 2007 WL 3224589, at *12 (D. Md. Sept. 27, 2007).

As to Article III standing, again Nosky presses that Aerotek has shown no injury-in-fact such that it may sue Nosky on this claim.  And again, the Court disagrees.  Indisputably, Aerotek has shown that it owns the records which Nosky took.  Further, Aerotek maintains a "property interest in the property that was allegedly converted."  *See Brass Metal Prod., Inc. v. E-J Enterprises, Inc.*, 189 Md. App. 310, 339 (2009).  The taking of such property is the kind of "actual legal stake in the matter being adjudicated" sufficient to confer standing.  *Norman v. Borison*, 192 Md. App. 405, 420 (2010) (internal quotation marks omitted), *aff'd,* 418 Md. 630 (2011); *cf. Kann*, 344 Md. at 697, 705 (no standing where plaintiff "was not entitled to possession" of the disputed property); *Olwell v. Nye & Nissen Co.*, 26 Wash. 2d 282, 286 (1946) (finding conversion even when plaintiff did not know property was missing and had no current use for it).

---

[4] Because Aerotek asserts deprivation of records from its Maryland offices, Maryland law applies.  *Terry v. Corp. Am. Family Credit Union*, No. JKB-19-1065, 2019 WL 5065183, at *7 (D. Md. Oct. 9, 2019) (quoting *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 613 (2006)); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011).

That said, the claim does not survive summary judgment because no evidence demonstrates that Nosky ever had exclusive possession of the records.  For the ten days that Nosky had the records, so did Aerotek.  ECF No. 54-4 at 28.  As Aerotek's representative conceded, "every single one of [the company records] still resides on Aerotek's computers and are still available to Aerotek."  *Id.*  From this, no reasonable trier of fact could conclude that Nosky's taking of the records totally deprived Aerotek of the same.  *Cf. 3PD, Inc. v. U.S. Transp. Corp.*, No. GJH-13-2438, 2015 WL 4249408, at *5 (D. Md. July 9, 2015) (no conversion when defendant "forwarded company information to his personal e-mail account," but company remained "free to use and access all of the information").  The claim, therefore, necessarily fails.  Summary judgment is granted in favor of Nosky.

## IV.     Conclusion

For the foregoing reasons, Nosky's motion to seal and Plaintiffs' motion for leave to file surreply are GRANTED.  Nosky's cross motion for summary judgment is GRANTED, and Plaintiffs' motion for summary judgment is DENIED.  A separate Order follows.

March 26, 2024
Date

/s/
Paula Xinis
United States District Judge

16